UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RG GOLF WAREHOUSE, INC.,

      Plaintiff,

v.                        Case No:  2:17-cv-695-FtM-29MRM

THE GOLF WAREHOUSE, INC.,

      Defendant.

_____

**OPINION AND ORDER**

      This matter comes before the Court on review of defendant's Motion to Dismiss (Doc. #49) filed on August 21, 2018.  Plaintiff filed a Response in Opposition (Doc. #51) on September 4, 2018. For the reasons set forth below, the motion is granted.

      This case arises out of a contractual dispute between two former business partners in the golf merchandise industry.  The issue raised is whether the Court may exercise personal jurisdiction over the out-of-state defendant.  The Court concludes that it may not.

**I.**

      According to the Amended Complaint (Doc. #46):  In 2011, Plaintiff RG Golf Warehouse, Inc. (Plaintiff) and The Golf Warehouse, Inc. (Defendant) considered entering into a business relationship.  (Id. ¶ 7(a).)   On January 27, 2011, Plaintiff's chief executive officer, Brad Wolansky, and Defendant's president,

Ronald Ploog, met in Orlando, Florida to "discuss the parties' prospective business relationship." (Id. ¶ 7(a)(i).) A few weeks later, on February 21, 2011, Plaintiff and Defendant executed a letter of intent to enter into a business relationship; Plaintiff and Defendant executed the final contract (the Referral Agreement) on March 10, 2011. (Id. ¶ 9.)

When the parties entered into the Referral Agreement, Plaintiff was a Minnesota corporation with "home offices in Minnesota and Lee County, Florida." (Id. ¶ 7(b)(i).) On June 17, 2013, after Defendant was purchased by a Minnesota entity, Defendant instructed Plaintiff to move its "business out of Minnesota within the next 13 days" in order to avoid "an intrastate tax nexus." (Id. ¶ 7(b)(ii).) Defendant informed Plaintiff that if it failed to comply with that request, Defendant would consider terminating the Referral Agreement. (Id. ¶ 7(b)(ii)-(iii).) Plaintiff complied with Defendant's request and on June 21, 2013 reincorporated in South Dakota and moved its principal place of business to Lee County, Florida. (Id. ¶ 7(b)(v).)

For the remainder of June 2013 through November 2014, Plaintiff "performed the [Referral Agreement] with its principal place of business in Lee County, Florida." (Id. ¶ 7(b)(viii).) During that time, Defendants used "Plaintiff's Florida address for all monthly sales data, payment reports, and remittances to Plaintiff, with payments made to Plaintiff's Wells Fargo Bank

account with a Florida address." (Id. ¶ 7(c)(i).) On November 12, 2014, Defendant terminated the Referral Agreement by written correspondence sent to "Plaintiff's address in Lee County, Florida." (Id. ¶ 7(b)(x).)

After Defendant terminated the Referral Agreement, Defendant filed an alleged "bad-faith trademark registration" so that it could tortiously interfere with a contract between Plaintiff and Golfsmith International (Golfsmith). (Id. ¶ 7(f).) Defendant allegedly used the trademark registration as the basis of "a misleading and improper cease-and-desist letter" it sent to Golfsmith. (Id. ¶ 7(f)(iv).) That cease-and-desist letter ultimately caused Golfsmith to terminate its contract with Plaintiff because Golfsmith wanted to avoid "the prospect of expensive trademark litigation" with Defendant. (Id. ¶ 7(f)(iv).) This lawsuit followed.[1]

## II.

Personal jurisdiction "is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (citation and quotations omitted). A federal court sitting in diversity must conduct a

---

[1] Plaintiff originally filed this lawsuit in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. (Doc. #2.) Defendant has since removed this action to this Court on the basis of diversity jurisdiction. (Doc. #1.)

two-step inquiry to determine whether it may exercise personal jurisdiction over an out-of-state defendant. Thomas v. Brown, 504 F. App'x 845, 847 (11th Cir. 2013). First, a court examines whether personal jurisdiction is authorized under the forum state's long-arm statute. Id. Second, a court examines whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Id.

The plaintiff "bears the burden of making out a prima facie case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." Id. at 847. The defendant must then raise "a meritorious challenge to personal jurisdiction" by submitting evidence "through affidavits, documents or testimony . . . ." Id. "If the defendant provides sufficient evidence, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." Id. (citation and internal quotations omitted). "If the plaintiff's complaint and the defendant's evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff." Id. (citation and internal quotation omitted).

## III.

The Amended Complaint asserts claims against Defendant for breach of contract (Count I) and tortious interference (Count II). Defendant now moves to dismiss the Amended Complaint for lack of

personal jurisdiction.  In response, Plaintiff asserts the Court may exercise both general and specific personal jurisdiction over Defendant.

## A. Sufficiency of the Complaint

Before addressing whether personal jurisdiction exists, the Court must first "determine whether the allegations of the complaint state a cause of action."  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010)(quotation and citation omitted).[2]

### 1) The Breach of Contract Claim (Count I)

Under Indiana law, the elements of a breach of contract claim are "the existence of a contract, the defendant's breach thereof, and damages."  Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc., 953 N.E.2d 1125, 1128-29 (Ind. Ct. App. 2011).  Here, the Amended Complaint alleges that (1) the parties entered into a contract (the Referral Agreement); (2) Defendant breached its contractual obligation to make certain payments to Plaintiff under

---

[2] Although "[t]he reach of the [Florida long-arm] statute is a question of Florida law," the Referral Agreement provides that it is "governed, construed and interpreted in accordance with" Indiana law (Doc. #46 Ex. B).  United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).  Thus, the breach of contract claim in Count I is governed by Indiana law.  However, because the tortious interference claim in Count II does not arise out of or relate to the Referral Agreement, Count II is governed by Florida law.  See Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1301 (11th Cir. 2003).

the Referral Agreement; and (3) Defendant's breach resulted in damages to Plaintiff. (Doc. #46, ¶¶ 33-37.) Accordingly, Plaintiff has stated a legally sufficient breach of contract claim under Indiana law. Live Nation, 953 N.E.2d at 1128-29.

### 2) The Tortious Interference Claim (Count II)

Under Florida law, the elements of a tortious interference claim are "(1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship." St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc., 784 So. 2d 500, 504 (Fla. 5th DCA 2001) (citations omitted).

Here, the Amended Complaint alleges that (1) Plaintiff had a business relationship with Golfsmith; (2) Defendant knew of that business relationship; (3) Defendant intentionally and unjustifiably interfered with that business relationship; and (4) Defendant's interference caused financial harm to Plaintiff. (Doc. #46, ¶¶ 48-51.) Accordingly, Plaintiff has stated a legally sufficient tortious interference claim under Florida law. Fernberg, 784 So. 2d at 504. Thus, the Court next examines whether personal jurisdiction is authorized under Florida's long-arm statute.

**B.    General Personal Jurisdiction**

General jurisdiction "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1221 (11th Cir. 2009). The general jurisdiction provision of Florida's long-arm statute[3] provides that: "[a] defendant who is engaged in substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of [Florida], whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).

Section 48.193(2)'s "substantial and not isolated activity" requirement is "the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment" to the United States Constitution. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Thus, in analyzing whether general jurisdiction is authorized under Section 48.193(2), the Court need only consider whether exercising such jurisdiction over Defendant comports with due process. Id.

Because general jurisdiction is based upon activity unrelated to a particular cause of action, the "due process requirements for

---

[3] As discussed *supra*, the Florida long-arm statute analysis is governed by Florida law. Mazer, 556 F.3d at 1274.

general personal jurisdiction are more stringent than for specific personal jurisdiction . . . ." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Under this more exacting standard, due process requires that a defendant's "affiliations with the State [be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014)(quotation and citation omitted).

A corporation's place of incorporation and its principal place of business are "the paradigm forum[s] for the exercise of general jurisdiction . . . ." Id. at 137. Only in "exceptional" cases will a "corporation's operations in a forum other than its formal place of incorporation or principal place of business [] be so substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n. 19.

Plaintiff asserts that Defendant it is "at home" in Florida, and that exercising general jurisdiction over Defendant thus comports with due process, because: (1) Defendant maintains a "highly-interactive sales website" that allows it to interact with Florida customers on a daily basis; (2) Defendant ships hundreds of products to Florida customers every day, with Florida sales comprising approximately 7% of its total sales; (3) Defendant relies on Florida companies to access its servers and process its shipments to Florida; (4) Defendant sends its employees to trade

shows in Florida; and (5) Defendant markets its business to potential Florida customers.  (Doc. #46, ¶ 8.)

In Schulman v. Inst. for Shipboard Educ., 624 F. App'x 1002, 1005 (11th Cir. 2015), the Eleventh Circuit found that a foreign corporation's attendance of a Florida tradeshow, distribution agreements with dealers in Florida, and marketing efforts in Florida were insufficient connections to Florida to "satisfy the demanding standard of the Fourteenth Amendment" in the general jurisdiction context.  The Court reasoned that those connections to Florida, "even when coupled with its [Florida] sales," failed to "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business."  Id. (quotation and citation omitted).

Similarly, in Daimler AG, the Supreme Court held that a German car-manufacturing company was not "at home" in California, even though its wholly owned subsidiary had "multiple California-based facilities," was "the largest supplier of luxury vehicles to the California market," and even if the subsidiary's California contacts were imputable to the German company.  571 U.S. at 123, 136.  The Court found that, since neither the German company nor its subsidiary were incorporated in or had their principal place of business in California, exercising general jurisdiction would result in the German company being subject to suit "in every other State in which [the subsidiary's] sales are sizable."  Id. at 139.

The Court thus reasoned that such an exercise of general jurisdiction would violate due process because it would not provide out-of-state defendants "with some minimum assurance as to where [their] conduct will and will not render them liable to suit." Id. (citation and quotation omitted).

Here, the Court finds this is not an exceptional case such that Defendant is subject to general jurisdiction in Florida. As in Schulman and Daimler AG, Defendant's marketing efforts to Florida customers, connections to Florida companies in Florida, and its employees' attendance of trade shows[4] in Florida are insufficient connections to render it "home" in Florida. Those contacts, even when coupled with Defendant's Florida sales, fail to "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." Schulman, 624 F. App'x at 1005. Indeed, as the Supreme Court cautioned against in Daimler AG, exercising general jurisdiction over Defendant based upon its sales in Florida would subject it to jurisdiction in each state in which its "sales are sizable" and would fail to provide Defendant "with some minimum

_____

[4] It is unclear to the Court how frequently Defendant's employees attend trade shows in Florida, as neither Plaintiff's Amended Complaint nor its Response in Opposition state how many times per year Defendant's employees attend such trade shows.

assurance as to where" it would be liable to suit. 571 U.S. at 139.[5]

For the foregoing reasons, the Court finds that exercising general jurisdiction over Defendant would violate due process. Accordingly, Plaintiff has failed to carry its "ultimate burden of establishing that [general] personal jurisdiction is present." Id. at 1217.

## C. Specific Personal Jurisdiction

Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." Oldfield, 558 F.3d at 1221 n. 27. Plaintiff asserts the Court may exercise specific jurisdiction over Defendant under Florida's long-arm statute because (1) Plaintiff and Defendant negotiated the Referral Agreement in Florida; (2) Defendant caused

---

[5] Citing to Coremetrics, Inc. v. Atomic Park.com, LLC, 370 F. Supp. 2d 1013 (N.D. Cal. 2005) and West Marine, Inc. v. Watercraft Superstore, Inc., No. C11-04459 HRL, 2012 WL 479677, at *1 (N.D. Cal. Feb. 14, 2012), Plaintiff argues that exercising general jurisdiction over Defendant comports with due process because Defendant, through its interactive website, maintains a "constant, virtual" presence in Florida, akin to a brick-and-mortar store. (Doc. #51, p. 2.) While those cases do support Plaintiff's assertion, the Ninth Circuit has rejected such an approach to general jurisdiction. See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1227 (9th Cir. 2011)("To permit the exercise of general jurisdiction based on the accessibility in the forum of a non-resident interactive website would expose most large [] entities to nationwide general jurisdiction."). To the extent that Coremetrics and West Marine are still persuasive authorities, the Court declines to adopt such an expansive jurisdictional approach.

Plaintiff to move its principal place of business to Florida by requiring that Plaintiff "terminate its business presence in Minnesota" (Doc. #51, p. 7); (3) Defendant tortiously interfered with Plaintiff's contract with Golfsmith in Florida; and (4) Defendant failed to make payments under the Referral Agreement in Florida.

The relevant portion of Florida's long-arm statute provides that a court may exercise specific jurisdiction over an out-of-state defendant for a cause of action arising from the following acts:

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> . . .
>
> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a)(1)-(7). The Court will address each argument in turn below.

**1) Section 48.193(1)(a)(1)- Engaging in Business in Florida**

**a. The Referral Agreement Negotiations**

Plaintiff argues the Court may exercise specific jurisdiction over Defendant under Section (1)(a)(1) of Florida's long-arm statute because the parties negotiated the Referral Agreement terms at the January 27, 2011 meeting in Orlando, Florida. In

response, Defendant contends the "Orlando meeting was legally immaterial" because the meeting only occurred in Florida out of "convenien[ce] to both parties at the time," since Defendant was in Florida at that time for a previously scheduled trade show. (Doc. #49, p. 18.)

In relevant part, Section (1)(a)(1) provides that a party is subject to specific jurisdiction for a cause of action arising out of a party's "[o]perating, conducting, engaging in, or carrying on a business or business venture in" Florida. Fla. Stat. § 48.193(1)(a)(1). To establish that a defendant is engaged in business under Florida's long-arm statute, "the activities of the defendant must be considered collectively and show a general course of business activity in [Florida] for pecuniary benefit." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005).

Here, considering the foregoing factors, the Court finds that Defendant has not engaged in business in Florida as defined by Section 48.193(1)(a)(1). First, the negotiations between

Plaintiff's president, Rondald Ploog, and Defendant's chief executive officer, Brad Wolansky, in Orlando, Florida are insufficient to satisfy Section 48.193(1)(a)(1). Indeed, "this fact alone does not establish that [Defendant] was conducting or carrying on a business in Florida, as Fla. Stat. § 48.193(1)(a)(1) requires . . . ." Melgarejo v. Pycsa Panama, S.A., 537 F. App'x 852, 861 (11th Cir. 2013).

Second, Plaintiff has not demonstrated that Defendant maintains an office, place of business, or business license in Florida. While Plaintiff has submitted evidence that approximately seven percent of Defendant's sales are made to Florida customers, the Court finds such sales insufficient to confer jurisdiction under Section 48.193(1)(a)(1). See Horizon, 421 F.3d at 1167-68 (finding no jurisdiction under Section 48.193(1)(a)(1) where out-of-state defendant had no office, place of business, or business license in Florida and sales to Florida customers totaled less than 5 percent of total sales). And although Defendant operates an interactive website that is accessed daily by potential and actual Florida customers, the Court finds that only amounts to doing business "as *if* in Florida," which is "insufficient under the plain text of the [long-arm] statute." Id. at 1167 (emphasis in original). Accordingly, Plaintiff has not demonstrated that the Court may exercise specific jurisdiction over Defendant under Section 48.193(1)(a)(1).

### b. Plaintiff's Relocation of its Principal Place of Business to Florida

Plaintiff asserts that the Court may exercise specific jurisdiction over Defendant because it caused Plaintiff to relocate its principal place of business to Florida. Specifically, Plaintiff alleges that, because Defendant knew Plaintiff "had some connection to Florida" and had no connection to any other state, Defendant caused the Florida relocation when it directed Plaintiff to move its business out of Minnesota. (Doc. #51, p. 8.)

The Court finds this conduct insufficient to support specific jurisdiction over Defendant. First, the Court is aware of no authority – and Plaintiff cites to none – establishing that such conduct satisfies Florida's long-arm statute.[6] Second, Plaintiff has failed to demonstrate that Defendant did in fact cause Plaintiff's move to Florida. Indeed, as Plaintiff alleges in the Amended Complaint, "Plaintiff did not have an *official* tie to Florida" prior to Defendant's request. (Doc. #46, ¶ (7)(b)(vii) (emphasis in original.) Because Plaintiff had no official tie to Florida, and since Defendant did not specifically request that Plaintiff relocate to Florida, Plaintiff has not demonstrated that

---

[6] To the extent that Plaintiff argues these actions constitute "[o]perating, conducting, engaging in, or carrying on a business" in Florida under Section 48.193(1)(a)(1), such conduct is insufficient to satisfy Florida's long-arm statute for the reasons discussed *supra*.

Defendant caused Plaintiff's relocation to Florida. Accordingly, Plaintiff's relocation of its principal place of business to Florida is insufficient to confer specific jurisdiction over Defendant under Florida's long-arm statute.

## 2) Section 48.193(1)(a)(2) – Committing a Tortious Act in Florida

Plaintiff argues the Court may exercise specific jurisdiction over Defendant pursuant to Section (1)(a)(2) of Florida's long-arm statute because the alleged tortious interference occurred in Florida. In relevant part, Section (1)(a)(2) provides that a party may be subject to specific jurisdiction for "[c]ommitting a tortious act within [Florida]."

The Amended Complaint asserts that the alleged tortious interference occurred in Florida because when Defendant sent the "misleading and improper cease-and-desist letter" to Golfsmith, the resulting financial harm to Plaintiff (Golfsmith's termination of its contract with Plaintiff) occurred in Florida. (Doc. # 46, ¶ 7(f)(iv).) In response, Defendant contends the alleged tortious interference did not occur in Florida because the cease-and-desist letter was sent by Defendant's counsel in Minnesota to Golfsmith's office in Texas.

Florida's appellate courts "are deeply divided on the issue of whether a tortious act committed outside the state resulting in injury inside the state subjects the actor to jurisdiction in

Florida under" Section (1)(a)(2) of Florida's long-arm statute. Posner, 178 F.3d at 1216. And the Florida Supreme Court has yet to address whether injury alone satisfies Section (1)(a)(2). See e.g. Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1206 n.6 (Fla. 2010) (declining to "decide the broader issue of whether injury alone satisfies the requirement of" Section (1)(a)(2)).

In light of the division among Florida's appellate courts, the Eleventh Circuit has "consistently [] applied the broader construction of" Florida's long-arm statute and held that injury alone satisfies Section (1)(a)(2). Posner, 178 F.3d at 1216; see also Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008) (holding that "the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state" (citation omitted)). Because the Florida Supreme Court has yet to resolve the conflict among the Florida appellate courts, the Court is bound by the Eleventh Circuit's holding in Posner and Licciardello.

Under Posner and Licciardello, the Court finds Section (1)(a)(2) satisfied because the alleged financial harm resulting from Defendant's interference with the Golfsmith contract occurred in Florida. Thus, because specific jurisdiction is authorized under Section (1)(a)(2) of Florida's long-arm statute, the Court will address whether exercising such jurisdiction over Defendant comports with due process *infra*.

### 3) Section 48.193(1)(a)(7) – Breach of a Contract Requiring Acts to be Performed in Florida

Plaintiff argues that the Court may exercise specific jurisdiction over Defendant because Defendant failed to make payments owed to Plaintiff under the Referral Agreement. Plaintiff asserts that after it relocated its principal place of business to Florida, Defendant used Plaintiff's Florida "address for all monthly sales data, payment reports, and remittances to Plaintiff" and made payments "to Plaintiff's Wells Fargo Bank account with a Florida address." (Doc. #46, ¶ (7)(c)(i).) Plaintiff thus reasons that, pursuant to Section 48.193(1)(a)(7), specific jurisdiction over Defendant is authorized under Florida's long-arm statute because Defendant failed to continue making payments to Plaintiff's Florida bank account under the Referral Agreement. In Response, Defendant argues that (1) Defendant's mere failure to make payments in Florida is insufficient to confer personal jurisdiction under Florida's long-arm statute; and (2) after Plaintiff's relocation to Florida, Defendant continued to make payments into Plaintiff's Minnesota bank account.

Section (1)(a)(7) of Florida's long-arm statute provides that a party may be subject to specific jurisdiction for "[b]reaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Failure to make payments owed under a contract "where payment is due to be made in Florida

is sufficient to satisfy" Section (1)(a)(7) of Florida's long-arm statute. Glob. Satellite Commc'n Co. v. Sudline, 849 So. 2d 466, 468 (Fla. 4th DCA 2003). Because the Referral Agreement is silent as to the place of payment, the Court must determine whether Defendant's payments to Plaintiff were "required by the contract to be performed in [Florida]." Id.

When a "contract is silent as to place of payment, it is presumed to be the place of residence of the payee." Id. (citations omitted). That presumption is generally "sufficient to satisfy the language of Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida." Laser Elec. Contractors, Inc. v. C.E.S. Indus., Inc., 573 So. 2d 1081, 1083 (Fla. 4th DCA 1991). It may, however, "be rebutted with evidence showing that payments were in fact required to be sent elsewhere." Dollar Rent a Car, Inc. v. Westover Car Rental, LLC, No. 2:16-CV-363-FTM-29CM, 2017 WL 5495126, at *8 (M.D. Fla. Nov. 16, 2017); see also Posner v. Essex Ins. Co., 178 F.3d 1209, 1219 (11th Cir. 1999).

Here, Defendant cites to the affidavit of Brett Hamrick, Defendant's chief financial officer, which sufficiently rebuts that presumption. The Hamrick affidavit provides that prior to Plaintiff's relocation, Plaintiff's president, Ronald Ploog, sent an email to Defendant's representative requesting that Defendant make payments to Plaintiff under the Referral Agreement via wire

transfer. (Doc. #6-1, ¶ 11.) In that email, which is attached as an exhibit to Hamrick's affidavit, Plaintiff's representative directed Defendant to send the wire transfers to "Wells Fargo Bank, N.A. Minneapolis," and provided the associated account and routing numbers. (Id., Ex. C.) According to the Hamrick affidavit, Defendant continued to make payments to Plaintiff's Minnesota bank account by wire transfer until the Referral Agreement was terminated in November of 2014. (Id., ¶ 12.)

Citing to Ronald Ploog's affidavit, Plaintiff asserts that after Plaintiff relocated its principal place of business to Florida, Defendant began sending wire transfers to Plaintiff's bank account in Florida. As support, the Ploog affidavit cites to an attached exhibit titled, "Wells Fargo Combined Statement of Accounts," which lists a Fort Myers, Florida and Bonita Springs, Florida mailing address associated with Plaintiff's bank account. (Doc. #18-1, ¶ 10; Id., Ex. 4-5.) While this "Combined Statement of Accounts" lists a Florida mailing address, it does not demonstrate where Defendant's wire transfers occurred, nor does it sufficiently rebut Defendant's contention that it continued to make payments by wire transfer to Plaintiff's "Wells Fargo Bank, N.A. Minneapolis" bank account. Because Plaintiff has not provided such evidence, Plaintiff has failed to carry its "ultimate burden of establishing that personal jurisdiction is present" under

Section (1)(a)(7) of Florida's long-arm statute.  <u>Oldfield</u>, 558

F.3d at 1217.

### 4) Due Process[7]

Because specific jurisdiction over Defendant is authorized

under Section (1)(a)(2) of Florida's long-arm statute, the Court

analyzes whether exercising such jurisdiction comports with due

process.  The Due Process Clause protects a defendant's "liberty

interest in not being subject to the binding judgments of a forum

with which [the defendant] has established no meaningful contacts,

ties, or relations." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S.

462, 471–72 (1985).  The exercise of personal jurisdiction over an

out-of-state defendant comports with due process when the

defendant has "minimum contacts with the forum state" and the

exercise of such jurisdiction "does not offend traditional notions

of fair play and substantial justice." <u>Mut. Serv. Ins. Co. v.</u>

<u>Frit Indus., Inc.</u>, 358 F.3d 1312, 1319 (11th Cir. 2004)(quotation

and citations omitted).

In the intentional tort context, whether an out-of-state

defendant has the requisite "minimum contacts" to satisfy the first

---

[7] Because the tortious interference claim in Count II is the only
claim in the Amended Complaint that satisfies Florida's long-arm
statute, the Court's due process analysis is limited to the
evidence related to Plaintiff's tortious interference claim.  <u>See</u>
<u>Posner</u>, 178 F.3d at 1220 (limiting due process analysis in multi-
count complaint to single claim that satisfied Florida's long-arm
statute).

prong of the due process inquiry is governed by the "effects test" set forth in Calder[8]. Licciardello v. Lovelady, 544 F.3d 1280, 1286 (11th Cir. 2008); see also Walden v. Fiore, 571 U.S. 277, 291 (2014)(noting that "[t]he proper focus of the 'minimum contacts' inquiry in intentional-tort cases is" the Calder "effects test" (citation omitted)).

In Calder, a California plaintiff filed a libel suit in a California court against the Florida-based publishers of an article written about the plaintiff. 465 U.S. at 784-85. Although the defendants wrote and published the libelous article in Florida, the Supreme Court found that the defendants had sufficient "minimum contacts" in California under the Due Process Clause. Id. at 788-89. The Court so held because the article "impugned the professionalism of [the plaintiff] whose television career was centered in California," the article used California sources and was widely published in California, and "the brunt of the harm . . . was suffered in California." Id. Thus, because the libelous article was "expressly aimed at California," and since California was "the focal point both of the story and of the harm suffered," jurisdiction was "proper in California based on the 'effects' of their Florida conduct in California." Id. at 789.

---

[8] Calder v. Jones, 465 U.S. 783 (1984).

Following Calder, some courts interpreted the Court's holding as establishing that "minimum contacts" may be established based upon where a plaintiff suffers harm.  571 U.S. at 286-89.  In Walden, however, the Supreme Court rejected such an approach to the "minimum contacts" analysis and expounded upon its holding in Calder.  Id.  The plaintiffs in Walden, Nevada residents, filed a civil rights law suit in a Nevada court against a Georgia police officer based upon events that occurred in an Atlanta airport. Id. at 279-80.  The plaintiffs alleged that when they arrived at the Atlanta airport, they were stopped by the Georgia police officer and had $97,000 in cash seized by the officer.  Id.  The officer then "draft[ed] an affidavit to show probable cause for forfeiture of the funds," which the plaintiffs alleged contained "false and misleading" statements.  Id. at 280-81.

Citing to Calder, the plaintiffs argued that although the police officer's actions occurred in Georgia, and not in Nevada, exercising personal jurisdiction over the police officer would nonetheless comport with due process.  Id. at 289-90.  The plaintiffs reasoned that, by filing the affidavit with "false and misleading" statements, the officer intended to cause harm to the plaintiffs in Nevada and thus had sufficient "minimum contacts" with Nevada.  Id. at 281, 289-90.  The Supreme Court held that the police officer lacked the requisite "minimum contacts" with Nevada because "no part of [his] course of conduct occurred in Nevada,"

as he "approached, questioned, and searched [the plaintiffs], and seized the cash at issue, in the Atlanta airport." Id. at 288.

In reaching its holding, the Court in Walden distinguished its holding from that in Calder. The Court noted that the "crux of Calder was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." Id. at 287. The Court explained that the defendants in Calder "relied on phone calls to 'California sources' for the information in their article," published the article "that was widely circulated in" California, and thus caused reputational injury to the plaintiffs that was overwhelmingly suffered in California. Id.

The Court in Walden observed that, unlike in Calder, the effects of the Georgia officer's conduct on the plaintiffs were "not connected to [Nevada] in a way that makes those effects a proper basis for jurisdiction." Id. at 290. The Court further rejected the notion that the "minimum contacts" inquiry was satisfied by the officer's knowledge that his actions would create harm in Nevada, as such an approach would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." Id. at 288-89. The Court instructed that the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 290.

Because the police officer's "actions in Georgia did not create sufficient contacts with Nevada," the Court found the exercise of personal jurisdiction over him violated due process.  Id. at 289.

Here, Plaintiff asserts that Defendant filed a "bad-faith trademark registration" and then used that registration to threaten Golfsmith with trademark litigation if Golfsmith continued to engage in business with Plaintiff.  (Doc. #46, ¶ 7(f).)  Plaintiff alleges that Defendant interfered in Plaintiff's business relationship with Golfsmith to "financially harm and weaken Plaintiff for purposes of resolving Plaintiff's breach of contract claims" and so that it could purchase "Plaintiff's registered domain for well below market price."  (Id., ¶ 52.) Plaintiff contends that personal jurisdiction over Defendant is proper because, by tortiously interfering with Plaintiff's business relationship with Golfsmith, Defendant intended to cause harm to Plaintiff in Florida.

In light of the previously discussed authorities, the Court finds Plaintiff has failed to satisfy the "minimum contacts" inquiry under the Due Process Clause.  As in Walden, Defendant's alleged tortious conduct does not connect it to Florida "in a meaningful way."  571 U.S. at 290.  That is, the cease-and-desist letter, which Plaintiff alleges ultimately caused Golfsmith to terminate its business relationship with Plaintiff, was sent by Defendant's counsel in Eden Prairie, Minnesota to Golfsmith's

office in Austin, Texas (Doc. #6-1, Ex. E), and Defendant's actions had no connection to Florida aside from the harm they caused to Plaintiff in Florida. While the Complaint alleges that Defendant's actions were intended to cause harm to Plaintiff in Florida, the "mere injury to a forum resident is not a sufficient connection to the forum" to satisfy the "minimum contacts" inquiry. <u>Walden</u>, 571 U.S. at 290.[9]

For the foregoing reasons, the Court finds Plaintiff has failed to satisfy the "minimum contacts" inquiry and that exercising jurisdiction over Defendant would therefore violate due process. Accordingly, the Court finds that Plaintiff has failed to carry its "ultimate burden of establishing that personal jurisdiction is present." <u>Oldfield</u>, 558 F.3d at 1217.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. #49) is **GRANTED** and the Amended Complaint is **dismissed without prejudice**.

---

[9] In its Response in Opposition, Plaintiff cites to Defendant's general connections to Florida (e.g. its marketing efforts and sales to Florida customers) as evidence of Defendant's "minimum contacts." As discussed *supra*, however, those Florida connections are not relevant to the Court's analysis as to the tortious interference claim in Count II, which is the only Count in the Amended Complaint that satisfied Florida's long-arm statute. Accordingly, the Court need not consider such evidence in its due process analysis. <u>Posner</u>, 178 F.3d at 1220.

2.   The Clerk is directed to terminate any pending deadlines and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this _____24th_____ day of January, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record